**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

BONNIE SUZANNE MARTIN, et al.,          *

    **Plaintiffs**                          *

v.                                      *          Civil No. JMC 14-1578

UNITED FARM FAMILY INSURANCE CO.,       *

    **Defendant**                           *

    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION

**THIS MATTER** is before the Court on the parties cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (ECF Nos. 24 and 28).

The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2011). For the reasons outlined below, the Court will grant Defendant's Motion for Summary Judgment and Deny Plaintiffs' Cross-Motion for Summary Judgment.

## I. BACKGROUND

The case at bar arises from a tragic and deadly all-terrain vehicle (ATV) accident that occurred shortly after midnight on March 18, 2012. James Lee Maticic, Jr. was driving the ATV, with Debranne Martin riding on back as a

passenger.  Mr. Maticic then collided the ATV with a guardrail on McKinstrys Mill Road in Carroll County, Maryland, killing both Mr. Maticic and Ms. Martin.

Plaintiffs, surviving family members of Ms. Martin, originally filed a personal injury suit in the Circuit Court for Carroll County against the Maticics and their various business entities.  The Maticics assigned their rights under their liability insurance policy issued by Defendant, United Farm Family Insurance Co., to Plaintiffs.  When Defendant denied coverage under that policy for Plaintiffs' claims, Plaintiffs filed a declaratory judgment action against Defendant in the Circuit Court for Carroll County seeking an order that the policy affords a defense and indemnity for Plaintiffs' personal injury claims.  That suit was then removed by Defendant to this Court based on diversity jurisdiction.

The parties have both filed motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the issue of whether or not there is coverage under the policy for the bodily injuries and death of Ms. Martin.  The parties agree that there is no dispute of material fact and that it is appropriate for the Court to render judgment as a matter of law based on the language of the policy.

## II.  DISCUSSION

### A. Factual Summary

Though not involved in the accident, Herbert Howard, a neighbor of Mr. Maticic, accompanied Mr. Maticic on the night in question and provided much of the factual background at his deposition.  Per Mr. Howard's deposition testimony, the incident began when Mr. Maticic suggested to Mr. Howard that they go for an ATV ride with Debranne Martin whereby Ms. Martin would ride as a passenger with Mr. Maticic, and Wyatt Haley (the son of a friend of Mr. Howard's) would ride as a passenger with Mr. Howard.  The group left together on the ATVs from Mr. Howard's property and went to Mr. Maticic's property so that Mr. Maticic could put on boots. The group spent approximately five minutes at Mr. Maticic's property before leaving for the ATV ride.

The trip began by riding through the open fields on Mr. Maticic's property (which is approximately 105 to 120 acres in size) to Quaker Hill Road. From Quaker Hill Road, the group then turned right onto trails on the property of Lehigh Cement.  The group stopped briefly on the Lehigh property before continuing through the trails and stopping again at a silo further down the trail.  The group remained at the silo for approximately ten minutes before continuing on to a final stop where the trail meets McKinstrys Mill Road.  (Mr. Howard

3

testified that this was their "regular trail ride" and that Mr. Maticic would use the trails several times a week.) Mr. Howard then told the group he was going home and parted ways with Mr. Maticic and Ms. Martin who proceeded on McKinstrys Mill Road, a paved public roadway. Shortly thereafter, the deadly accident involving Mr. Maticic and Ms. Martin occurred, approximately 110-120 yards from where the group parted ways, *i.e.*, where the trail ended at McKinstrys Mill Road. It is roughly one mile from the scene of the accident to the Maticic property.

The deaths of Mr. Maticic and Ms. Martin were investigated by the Carroll County Sheriffs Office Traffic Homicide Unit. That investigation concluded that the accident occurred when Mr. Maticic "failed to negotiate a curve by failing to travel within a single lane, crossing the double yellow lane divider, and continuing onto the northbound grassy shoulder striking a guardrail . . . throwing the occupants off. . . ."

In denying that coverage exists for the accident in question, Defendant relies on the following exclusion, which excludes coverage for injuries that occur "away from the insured premises":

4

> *Sections A and B do not apply to BODILY*
> *INJURY/PROPERTY DAMAGE or MEDICAL EXPENSES:*
>
> *10. arising from the ownership, maintenance,*
> *operation,     use,     loaning,     renting,*
> *entrustment,    supervision,    occupancy,*
> *LOADING or UNLOADING of the following:*
>
> *d. owned RECREATIONAL MOTOR VEHICLES if the*
> *BODILY  INJURY  or  PROPERTY  DAMAGE  occurs*
> *away from the insured PREMISES.*

Under the policy, "insured PREMISES" is defined as:

> *[T]he locations designated on the Schedule,*
> *including RESIDENCES, BUILDINGS and their*
> *private approaches. . .  Under Division V,*
> *PREMISES also includes the following (which*
> *do not have to be designated on the*
> *Schedule):*
>
> *a. that part of a premises not owned by YOU*
> *if it is temporarily used as residence by*
> *YOU; and*
>
> *b. all farm locations YOU own, rent, occupy or operate.*

The only residence and buildings on the Schedule are those listed at 4480 Priestland Road, Union Bridge, Maryland.  There is no dispute that the ATV involved in the accident was a "*RECREATIONAL MOTOR VEHICLE*" as defined by the policy.  There is no dispute that the accident occurred on a public road that was not part of the insured premises and that the site of the accident was approximately one mile away.

## B. Analysis

A federal district court sitting in diversity applies the law of the forum state in which the court sits.  *Twin City Fire*

*Ins. Co. v. Ben Arnold-Sunbelt Beverage Co.,* 433 F.3d 365, 369 (4th Cir. 2005).   Maryland courts employ an objective approach to interpretation of unambiguous contractual clauses, in which the inquiry is restricted to the four corners of the contract. *Ocean Petroleum Co., Inc. v. Yanek,* 416 Md. 74, 86, 5A.3d 683, 690 (2010).   Further Maryland courts ascribe to the contract's language its "customary, ordinary, and accepted meaning." *Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 210, 783 A.2d 194, 199 (2001) (internal quotation marks and citation omitted). Insurance policies are construed like any other contract. *Empire Fire & Marine Ins. Co. v.Liberty Mut. Ins. Co.,* 117 Md. App. 72, 95, 699 A.2d 482 (1997) ("The 'first principle of construction of insurance policies in Maryland is to apply the terms of the contract.'").   *See also State Farm Mut. Auto. Ins. Co. v. DeHaan,* 393 Md. 163, 193, 900 A.2d 208 (2006); *Cole v. State Farm Mut. Ins. Co.,* 359 Md. 298, 305, 753 A.2d 533 (2000).

Here, the parties dispute the meaning of the phrase "away from the insured premises."   Defendants urge that because the accident occurred at a location other than the "insured premises" as defined by the policy, the accident was therefore "away from" from the insured premises.   (ECF No. 24 at p. 6.) Plaintiffs—relying largely on two cases from other jurisdictions—argue that "away from" is ambiguous and that even though the accident occurred at a location other than the insured premises, there

should nonetheless be coverage in this case because the accident location was "logically connected" to the insured premises. (ECF No. 28 at p. 7.)

In the Court's view, "away from the insured premises" is clear and unambiguous and, given its plain meaning, describes incidents at locations other than the insured premises. This is also consistent with the policy's own definition of "away from" in other parts of the policy. For example, for certain coverage not applicable to the present case, the policy does explicitly extend coverage "away from the insured premises," such as coverage for farm supplies, tools, and products. In that instance, the policy goes on to specifically describe "away from" coverage as applying when the property is "removed from locations which you own, rent or operate." Given this plain meaning definition of "away from" where the policy is extending coverage, there is no reason to apply a different definition in interpreting the instant provision where the policy is restricting coverage.

Additionally, there are other portions of the policy not applicable to the present case that extend coverage beyond the "insured premises" to the "coverage territory" (defined as anywhere from the United States and its territories to all other parts of the world depending on the coverage). For example, discharge of pollutants from farming operations extends to the

7

"coverage territory" in certain circumstances described in the policy.

Taken as a whole then, the policy clearly supports the plain meaning and interpretation urged by Defendant here whereby there would be no coverage for incidents involving recreational vehicles where such accidents occurred in locations other than a location that the insured owns, rents, or otherwise conducts farming operations (*i.e.,* the insured premises).

This conclusion is in accord with other cases applying Maryland law on the issue of an injury occurring away from insured premises. For example, in *Snyder v. Travelers Insurance Co.,* 251 F. Supp. 76 (D.Md. 1966), involving an injury to a longshoreman on a floating crane which occurred six to eight miles away from the insured premises, the language of the policy exclusion was nearly identical to that at issue in this case: "This policy does not apply: (a) under division 1 of the Definition of Hazards, and under Coverage C, to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the accident occurs away from premises owned by, rented to or controlled by the named insured." *Snyder*, 251 F. Supp. at 78. In response to an assertion by the insured that the word "premises" should include the maritime vessel, the court replied that "the policy throughout speaks of 'premises' as a fixed site on land owned, rented or controlled by" the insured.

8

Hence, it was indisputable that an incident happening six miles distant was "away from" the premises. 251 F. Supp. at 79. Similarly, the policy in the present case specifically defines the insured premises as the fixed site of land identified in the policy, plus any other fixed site that Maticic used as a temporary residence or leased or occupied as farm land. No part of that definition can include adjoining or distant properties owned or used by others, or public roads.  Hence, there can be no dispute that the accident, happening on a public road, reached by traversing the land of others that is one mile from the insured premises, happened "away from" the insured premises.

The result was the same, again involving an exclusion for incidents happening "away from premises, owned, rented or controlled by" the insured, in *Smith v. Maryland Casualty Co.,* 246 Md. 485, 229 A.2d 120 (1967). In that case, the injured attempted to avoid the "away from the premises" language by asserting that the exclusion should be interpreted as covering an injury that occurred after the injured party had left the premises with a defective toy by claiming that the sale of the toy was "incidental" to the operation of the premises and so covered under the premises-operations coverage. Declining this proffered ambiguity, the court ruled that the incident would have been covered if it had happened on the church premises, 246 Md. at 489. The court further found that "[t]here is no

9

ambiguity in the case before us and we see no reason why the exclusion should not be given its obvious meaning. . . . The facts are simple and they are not in dispute. The language of the policy may be technical and not easy to understand but, as we have said, it is free from ambiguity." 246 Md. at 491. Here, the facts are equally simple and the language of the policy is not technical or difficult to understand. It plainly states that accidents occurring with ATVs used away from the insured premises are not covered.

By contrast, the Plaintiffs' argument that coverage should be extended to any location "logically connected" to the insured premises based on Mr. Maticic's "regular recreational use of an ATV trail ride" (ECF No. 28 at p. 6) ignores plain meaning and the other policy provisions cited above and instead invites ambiguity. This is particularly so because Plaintiffs' chief basis for such a definition is based on an alleged personal past habit and practice of the insured in riding a particular route of ATV trails. Extending coverage based on the idiosyncrasies of the insured subjects an insurer to liability far beyond its bargained for risk, especially under a policy that is careful to define the circumstances of such extension as noted above.

The Court further notes that in both of the cases cited by Plaintiffs in support of their "logical connection" argument,

the site of the accident either involved a location encompassing both the insured premises and an adjacent property (*see General Casualty Company of Illinois v. Olsen*, 56 Ill.App.3d 986, 372 N.E.2d 846 (1977) (mini-bike accident on oval dirt track that crosses insured premises and property line) or the accident originated on the insured premises but completed on an adjacent property *(see York v. Sterling Insurance Co.*, 114 A.D.2d 665, 494 N.Y.S.2d 243 (1985); *aff'd.*, *Sterling Insurance Co. v. York*, 67 N.Y.2d 823, 492 N.E.2d 770 (1986) (victim lost control of dirt bike on property but came to rest ten feet over property line). Thus, even if such a doctrine were applied in this case, the Court could not extend the "logically connected" interpretation to the accident site at issue which was not part of the insured premises and not even immediately adjacent to the insured premises, but rather one mile away from the insured premises on a different public road.

Finally, the Court is not persuaded by Plaintiffs' reliance on *JMP Assc., Inc. v. St. Paul Fire & Marine Ins. Co.*, 345 Md. 630, 693 A.2d 832 (1997). There, the Maryland Court of Appeals found the phrase "in or on" a vehicle to be ambiguous, and extended coverage in to an incident occurring while the vehicle was in a service station and the driver was paying for the service. It is far from clear what the phrase "on" a vehicle might mean. By contrast, the policy at issue's

language of "away from the insured premises" suffers from no such ambiguity, especially in the context of the rest of the policy and as applied to the incident in question.

### III. **CONCLUSION**

For the foregoing reasons, the Court will, by separate order, GRANT Defendant's Motion f o r S u m m a r y J u d g m e n t (ECF No. 24) and DENY Plaintiffs' Cross-Motion for Summary Judgment (ECF No. 28).

Entered this **24th day of November, 2014.**

_____/s/_____

J. Mark Coulson
United States Magistrate
Judge
